## J. & S. SHANNON *vs.* COMSTOCK and others.

In an action to recover damages for the non-performance of a contract, other than for the conveyance of land, the *rule of damages* is the *loss or injury* sustained by the party ready and willing to perform, and *not the price agreed to be paid* on *actual performance:* the rule of law that a *tender* is equivalent *to performance*, applies only to the *right of action*, and not to the *measure of damages.*

*It seems,* however, that if the non-performance was not *involuntary*, but on the contrary was attributable to *fraud* or to a desire to *benefit* the party failing, that such circumstances may be taken into consideration to enhance the damages.

In a suit in a *justice's court*, on its appearing that a party who has been *arrested* on a warrant for the recovery of damages for the non-performance of a contract was not under the act to abolish imprisonment subject to arrest, it is the duty of the justice to dismiss the proceedings, although they were originally instituted on proof that the defendant was a *non-resident*.

A *plea* in a justice's court is *not a waiver* of objections previously taken and decided against the defendant.

A *plea in abatement* by two defendants, of a matter personal to one of them is bad.

*It seems*, that in an action against two, if the defendants be *arrested*, and one of them was not subject to arrest, the party entitled to exemption from arrest may claim to be discharged.

ERROR from the Washington common pleas. Comstock and three other persons, owners of a boat on the Champlain canal, commenced a suit by *warrant* in a justice's court against J. & S. Shannon for a breach of *contract;* the warrant having issued on an affidavit that the defendants were *non-residents* of the state. The defendants were *arrested* and brought before the justices. The plaintiffs declared on a contract entered into between them and the defendants, whereby they had engaged to transport a number

VOL. XXI.        58

of horses for the defendants in a canal boat from Whitehall to Albany, for the consideration of *fifty-five dollars*, to be paid to them by the defendants. The plaintiffs averred *a readiness* and *offer to perform* on their part, and a neglect and refusal on the part of the defendants. Before pleading to the declaration, the defendants moved to quash the proceedings, on the ground that they were residents of the city of New York, and *not subject to arrest by warrant ;* the plaintiffs, for the purpose of the motion, *admitted* that the defendants then were, and for more than thirty days had been residents of the town of Granville, in the county of Washington. The justice refused to grant the motion. The defendants then *pleaded in abatement* that *Joseph Shannon*, one of the defendants, at the time of the commencement of this suit, was, and for more than thirty days preceding had been a resident of this state ; to which plea the plaintiffs *demurred*, and the justice decided the plea to be bad. The defendants then pleaded the *general issue*, and the parties proceeded to trial. The plaintiffs proved the contract as laid in the declaration, and that it was made on the *second* day of *June*, 1826, and that the horses were to be embarked on the *third* day of June. On the *third*, about a dozen horses were embarked ; but after their embarkation, they were so restive that it was *impossible* to keep them on board the boat, and after remaining on board about an hour, the defendants took them off, and abandoned the idea of transporting the horses in that manner. The defendants inquired of a witness as to the probable amount of damages sustained by the plaintiffs, in consequence of the contract made with the defendants, and the inability on their part to carry it into effect : which inquiry was objected to by the plaintiffs, and overruled by the justice. The defendants offered to prove that the damages sustained by the plaintiffs did not exceed *five dollars :* which evidence was also objected to, and excluded. The justice charged the jury, that the plaintiffs having shown *a readiness* and *offer to perform* the contract on their part, and a neglect or refusal on the part of the defendants, were entitled to recover the *contract price.* The jury found a verdict for the plain-

tiffs for *twenty-five dollars*, on which the justice rendered judgment. The common pleas of Washington, on *certiorari*, affirmed the judgment; whereupon the defendants sued out a writ of error.

*E. D. Culver*, for the plaintiffs in error.

*L. Gibbs*, for the defendants in error.

*By the Court*, COWEN, J. Upon the motion to quash the warrant, the plaintiffs before the justice admitted that the defendants were residents of Granville, in Washington county, and had been so for more than thirty days before the warrant was taken out. The justice had jurisdiction of the process, and the affidavit on which the warrant issued made it regular in the first instance. But certainly the affidavit was not conclusive. It was still open to be met by the defendants, on proof that it was made under a plain mistake. That was admitted, and the justice should, therefore, have dismissed the suit; or, to speak more technically, he should have set aside the proceedings for irregularity.

I admit the plea in abatement was bad. It went to the whole suit, for a cause personal to one of the defendants only. It was therefore bad as a plea, whatever it might have been as a motion. *De Forest v. Jewett*, 1 Hall's R. 137. I am inclined to think that where two persons are arrested in a suit against both jointly upon a contract, and one is a resident of this state and has been for more than a month, he must be discharged. But let that pass.

Nor is it any answer that the defendants finally pleaded in bar. Such an answer must rest on the ground of voluntary waiver; here the propriety of the arrest was questioned at once, on admitted facts, and the defendants were compelled to plead over.

Again : the *rule of damages* was mistaken. The defendants were indeed bound to furnish the proposed freight in horses, and the plaintiffs were ready to take it at the $55 agreed to be given; but it by no means follows that the latter was the sole measure of damages. The plaintiffs

tendered their labor, which it was impossible for the defend-
ants to avail themselves of. Suppose the plaintiffs had *the
next hour* been furnished with freight entirely adequate to
the voyage, at the same sum; they then would have been
entitled to the damage arising from detention for that time,
but no more. The authorities cited for the defendants in error
are altogether misapplied. They go to show, what no one
will dispute, that a tender and offer to perform is equivalent
to performance. But that is merely for the purpose of sus-
taining an action. It is a rule of pleading in which you do
not aver performance. If it were actual performance, you
need not even declare specially. This shows that it is not
performance, though in one respect it resembles it conse-
quentially. In this, it is *quasi* performance; but it does not
regulate the amount of damages. A man agrees to convey
his farm, and the money is tendered, but he cannot give a
title; this is not a case for damages even for the loss of a
good bargain; but the damages would be merely nominal.
Yet if the tender were the same in respect to damages, as a
performance, that is to say, actual payment, the vendee
might keep his money and recover the value of the thing.
See *Baldwin* v. *Munn,* 2 Wendell, 399, and per *De Grey,*
C. J, in *Fleureau* v. *Thornhill,* 2 Black. R. 1078. Suppose
the defendants below had, on the very day of the contract,
given notice to the plaintiffs that they could not furnish the
horses, and should not attempt to do so; it is equally well
settled that the plaintiffs might have recovered damages,
without any tender or offer to perform on their part. In
such case, or where it becomes impossible for one party to
perform, the other side is absolved from all obligation to
move and may sue immediately. That too is considered
equivalent to a performance by the side which is not in fault.
And yet shall it be said that the whole sum to be paid for
actual performance may be recovered? Suppose in the
case of the covenant to convey a farm for a specified sum,
and a deed tendered but refused, and the vendor sells to an-
other, shall he yet recover the whole price of the original
vendee? I admit that in some cases, where property is so
tendered, and the tender is not withdrawn, the price may

be recovered; but this is on the ground that the thing sold has an independent existence, and the corpus not being perishable, and having legally passed by the tender and subsequent recovery, may still be actually delivered over whenever the vendee shall demand it. That was held where a deed had been tendered in *Alna* v. *Plummer*, 4 Greenl. 258. The same rule was applied to goods, in *Bement* v. *Smith*, 15 Wendell, 493. The vendor was to make a sulkey, deliverable at a certain time and place to the vendee. It was finished and tendered, but refused, and the vendor told the vendee he would leave it with De Wolf, who resided in the neighborhood. The vendor was allowed to recover the price. This court held that he had his election to resell, and recover what he lost by the resale, or make the tender and keep it good, and recover the whole original price agreed. But the distinction between that case and the one at bar is very obvious. Here we have a contract to sell labor and services. On the vendee declining them, the vendor sells them to another or converts them to his own use: in other words, he goes about his business in another direction, which fetches him the same or nearly the same, or more, perhaps, than the agreed price, which has failed. This is necessarily so, unless the vendor of the labor choose to lie idle, for the supposed length of time which performance would have demanded. But that he has no right to do. The rule of this subject is well laid down by Mellen, Ch. J. in *Miller* v. *Mariner's Church*, 3 Greenl. 51, 55, 56. "In general the delinquent party is holden to make good the loss occasioned by the delinquency. But his liability is limited to direct damages, which according to the nature of the subject, may be comtemplated or presumed to result from his failure. The purchaser of perishable goods at auction fails to complete his contract. What shall be done? Shall the auctioneer leave the goods to perish, and throw the entire loss upon the purchaser? That would be to aggravate it unreasonably and unnecessarily. It is his duty to sell them a second time, and if they bring less, he may recover the difference, with commissions and other expenses of resale, from the purchaser. If the party entitled to the ben-

efit of the contract can protect himself from the loss arising from a breach, at a reasonable expense, or with reasonable exertions, he fails in his social duty, if he omits to do so, regardless of the increased amount of damages for which he may intend to hold the other contracting party liable." The reason and justice of these remarks are open to continual illustration in the affairs of men. A mason is engaged to work for a month, and tenders himself and offers to perform, but his hirer declines the service. The next day the mason is employed at equal wages elsewhere for a month. Clearly his loss is but one day; and it is his duty to seek other employment. Idleness is in itself a breach of moral obligation. But if he continue idle for the purpose of charging another, he superadds a fraud, which the law had rather punish than countenance. "Damages and interests," says the civil law and the continental writers, " are the loss which a person has sustained, or the gain which he has missed." 1 Ev. Poth. 90, Lond. ed. 1806.

In the case at bar, it is hardly possible that the deck of the plaintiffs' boat could have remained entirely useless and unprofitable, during all the time necessary for a trip to Albany. The jury, I perceive, notwithstanding the total exclusion of evidence, and the rigor of the rule laid down by the magistrate in his charge, reduced the damages to less than one half the contract price, probably on the general knowledge which they had of the facilities for engaging freight at Whitehall, and thereby avoiding the injury arising from disappointments like that in question. Clearly the defendants should have been allowed, as they offered, to show that a farther reduction would have been just. The loss arose from their mere misfortune. If they had acted selfishly or fraudulently, this would have made a shade of difference against them. But all the witnesses concur that the failure was from causes which the defendants could not have anticipated, much less have controlled. The judgments of the courts below must be reversed.

Ordered accordingly