Scott, J. The only legitimate question presented in this case is, whether or not the court below erred in overruling the appellant’s motion for a new trial. The action was commenced on the 29th of March, 1847, and, having been continued at the May term, to which it was returnable, .was finally disposed of at the November term of that year. The testimony, set out in the appellant’s bill of exceptions to the refusal of the court to grant him a new trial, shows “ that the defendant (below), about the last of December, 1846, employed the plaintiff (below) as an overseer, upon his plantation, for one year, from the first of January, 1847, agreeing to pay him for his services five hundred dollars, for the year, and to furnish him, and his family, with meat, meal and vegetables, which were worth per month, six dollars, or, for nine months, fifty-four dollars: that, in March, 1847, without any fault on the part of the plain-*' tiff, the Mississippi river overflowed the plantation and destroyed* the crop: that, after the plaintiff had served, as an overseer, for three months, having all the time discharged his duty in every respect, and being willing still to continue as overseer, the defendant told him he had no further use for his services, and discharged, him at the end of such three months: that the plaintiff was, the next day, employed by another planter, as overseer, and his pay commenced, a day or two afterwards, for and at the compensation of three hundred and fifty dollars, for the residue; of the year, and meal, meat and vegetables for himself and family, during the time, in which employ he still continued at the time of the trial, the contract still continuing, and some part of the compensation by his second employer having been paid him.” And this being all the testimony, the court instructed the jury “that the testimony as to the plaintiff (below) being employed again, and the compensation received and% to be received under his second employment, (all which was introduced by the defendant below,) was competent evidence in mitigation of damages, but that the whole question as to the weight and effect of it was for the jury.” Whereupon the jury found for the plaintiff (below) five hundred and fifty-four dollars, for which sum judgment was rendered. From the amount of the verdict, it is manifest that the jury gave no weight at all to the evidence touching the second employment, but allowed the plaintiff the full year’s pay, and also the further sum of fifty-four dollars, for meat, meal and vegetables, for nine months, at the rate of six dollars per month. With this statement of the case, we will proceed to the examination of the question presented. There is no question as to the 'general rule, long and well established, that where one contracts to employ another for a certain time, at a specified compensation for the whole time, and discharges him, without cause, before the expiration of the time, he is, in general, bound to pay the whole amount of the wages for the full time. But this general rule has more especial reference to the sustaining of the action than to the admeasurement of the damages to be thereby recovered : or, in other words, while it is universally applied to the one and very frequently to the other, it is not in every case so applicable; or, to be still more explicit,'‘•although a tender and offer to perform, by the party not in fault, is equivalent to performance for the purpose of sustaining the action, the damages to be recovered are not universally and necessarily to be measured by the amount that was stipulated to be paid on actual performance, but, for the most part, when these contracts concern personal property or personal services, the true rule of damages is the actual loss or injury sustained by the party ready and willing to perform. In the language of Chief Justice Miller, of the State of Maine, the “ liability is limited to direct damages, which, according to the nature of the subject, may be contemplated or presumed from the result of his failure.” And if this were not so, extreme injustice would often be visited upon those who are honest, and who, by events that could not have been foreseen and were beyond their control, would, without fault, be found in circumstances under which they would be obnoxious to this iron rule were it unqualified as to damages. Doubtless this general rule is based on natural equity, as are all the rules of positive law,' and, like most of these, has been sanctioned by long experience of its great utility in subserving and answering the ends of justice, and, so far as the maintaining of the action for the breach of any such contract is concerned, is perhaps unbending; but, to use it in all such cases as the sole rule for the admeasurement of damages, were to pervert it from the great end of its institution, and make it an instrument of injustice. Accordingly, in a numerous class of cases, that general rule has been displaced, as an admeasurement of damages, by that to which we have alluded, which is, b y no means, subversive of that general one, and is manifestly based on principles of obvious equity, and which, perhaps, like many of the rules of the common law courts, has either found its way into these tribunals through the medium of the admiralty and equity courts, which had adopted it from the civil law, or else the exigencies of society, in a more advanced state of civilization and refinement, have developed it from the latent powers and capacity of the common law to subserve the great end of its mission to the Anglo Saxon race. Be this as it may, however, it is so fully recognized by the courts, and so well sustained by reason, justice, and authority, that we hesitate not to recognize it as a rule of the common law courts, and to apply it to cases like this now before us. The general rule proceeds upon the idea that tender is equivalent to performance. For the purpose of founding the action this is true, and also true, prima facie, for the purpose of measuring the damages; but, for both purposes, it does, in fact, fall short of actual performance: else why declare specially? for, if it were, indeed, actual performance, you need not so declare. A man agrees to convey his farm, and the money is tendered, but he cannot give a title : this is not a case for damages, even for the loss of a good bargain; but the damages would be merely nominal. Yet, if the tender were the same in respect of damages as performance, to wit: actual payment, the vendee might keep his money and recover of the vendor the value of the farm. “In cases where it becomes impossible for one party to perform, the other side is absolved from any obligation to move, and may sue immediately. That, too, is considered equivalent to performance by the side not in fault: and yet shall it be said that the whole sum to be paid for actual performance shall be recovered? Suppose in the case of a covenant to convey a farm, for a specified sum, and a deed tendered by the vendor, but refused by the vendee, and the vendor sell to another, shall he yet recover the whole price of the original vendee ? It is admitted that, in some cases, where property is so tendered and the tender is not withdrawn, the price may be recovered; but this is upon the ground that the thing sold has an independent existence, and the corpus, not being perishable, and having legally passed by the tender and subsequent recovery, may still be actually delivered over whenever the vendee shall demand it.” As in cases like that of Bcment vs. Smith, 15 Wend. 492, where the vendor was to make a^sulkey, deliverable at a certain time and place to the vendee. It was finished and tendered, but refused, and the vendor told the vendee he would leave it with*Dr. Wolf, who resided in the neighborhood. The vendor was allowed to recover the price, —the court holding that he had an election to re-sell and recover what he lost by the re-sale, or to make the tender and keep it good, (that is, not to withdraw it,) and recover the whole original price agreed. It is obvious that, in cases like these, there is more reason for confining the damages to the rule of the full price stipulated^ than in the sale of personal services, because, in these cases, the corpus is tangible, and, when the party has been made to, pay the full price, the corpus becomes his own by operation of law, and he may go and take it into possession, and use it, although he had before repudiated it. Not-so, however, in the.^case of personal services : for the corpus, in these cases, beingAtangible, the payment of the full price, after the tender, gives the derelect party no right to have the services for which he has paid. True it is that this rule of election was doubtless designed mainly for the protection of the innocent party, and would be especially valuable to him in cases where the derelict party might be in doubtful circumstances; but there is no rerson to suppose that it was designed for more than this; or, in other words, intended to enable him to act vindictively towards the derelict party. In the case of Shannon vs. Comstock, 21 Wend. 457, the plaintiff declared on a contract between him and the defendant, whereby he had engaged to transport a number of horses for the defendant on a canal boat from White Hall to Albany, for the consideration of fifty-five dollars, to be paid him by the defendant, and averred his readiness and offer to perform and the neglect and refusal of the defendant. The plaintiff proved the contract as laid in the declaration, and that it was made on the 2d of June, 1836, and that the horses were to be embarked on the 3d June. It was further proven, “ that on the third of June, about a dozen horses were embarked, but after their embarkation, they were so restive that it was impossible to keep them on the boat, and after remaining on board about an hour, the defendant took them off, and abandoned the idea of transporting the horses in that manner.” The court below in that case, holding to the notion that the stipulated price to be paid for the transportation was the measure of damages, refused to hear any testimony going to show the actual damage, and the supreme court of New York, in reversing the judgment for that error, remark, Judge Cowes delivering the opinion of the court, as follows: “ Here we have a contract to sell personal services and labor. On the vendee declining them, the vendor sells them to another, or converts them to his own use; in other words, he goes about his business in another direction, which fetches him the same, or nearly the same, or more perhaps than the agreed price which has failed. This is necessarily so, unless the vendor of the labor chooses to lie idle for the supposed length of time, which performance would have demanded. But this, he has no right to do. The rule on this subject is well laid down by Mellon, Ch. J., in Miller vs. Mariner's Church, 3 Greenl. 51, 55, 56.” “In general, the delinquent party is holden to make good the loss occasioned by the delinquency. But his liability is limited to direct damages which, according to the nature of the subject, may be contemplated or presumed to result from his failure. The purchaser of perishable goods at auction fails to complete his contract. What shall be done ? shall the auctioneer leave the goods to perish, and throw the entire loss upon the purchaser? that would be to aggravate it unreasonably and unnecessarily. It is his duty to sell them a second time, and if they bi'ing less, he may recover the difference, with commissions and other expenses of resale from the purchaser. If the party entitled to the benefit of the contract can protect himself from the loss arising from' a breach at a reasonable expense, or with reasonable exertions, he fails in his social duty, if he omits to do so, regardless of the increased amount of damages, for which he may intend to hold the other contracting party liable.” Upon which Judge Cowen continues to remark: “ The reason and justice of these remarks are open to continual illustration in the affairs of men. A mason is engaged to work for a month, and tenders himself and offers to perform, but his hirer declines the service. The next day the mason is employed at equal wages elsewhere for a month. Clearly his loss is but one day, and it is his duty to seek other employment. Idleness is in itself a breach of social duty and of moral obligation. But if he continue idle for the purpose of charging another, he superadds a fraud which the law had rather punish than countenance.” “ Damages and interest,” say the civil law and the continental writers, “ are the loss which a person has sustained, or the gain which he has missed.” And in concluding his remarks upon that case, he says, “ the loss arose from mere misfortune. If the defendant had acted selfishly or fraudulently, this would have made a shade of difference against him. But all the witnesses concur that the failure was from causes which the defendant could not have anticipated, much less have controled.” All this was repeated and enforced in Hicksher vs. McRea, 24 Wend. 309, where the court say, “by failing to perform and that promptly, I admit the defendants have subjected themselves to an action for damages. That, they do not deny; but it by no means follows that where a man has hired out the services of his person or property at a stipulated price, and the employer has failed to perform, the employee may, either by lying still or omitting to engage otherwise in the general line of his business, as a matter of course, subject his employee to a payment of the whole contract price.” And after again repeating the language of the Chief Justice of Maine, on the subject of the duty of the innocent party to “protect himself from loss," by reasonable expense or with reasonable exertions,” the court say, “ a doctrine so sound in morals, I never could have suspected to be wanting in any department of the law.” These doctrines were again brought in review before the supreme court of New York, at May term, 1846, by the case of Costigan vs. The Mohawk and Hudson Rail Road Co., reported in 2 Denio, 609, where a recovery of the whole stipulated price, sought by the innocent party, who had been employed as superintendent of a rail road for a year, was attempted to be resisted on the presumption that he might have engaged, although he did not actually engage in any other employment during the contract time, after having been discharged. And, after an examination of the cases, we have noticed, and numerous other cases, chancery, admiralty and common law, where this doctrine has been recognized and enforced, Mr. Justice Beaudslby, who delivered the opinion of the court, remarks: “ In all the cases I have cited, the facts on which the delinquent party sought to bring the amount to be recovered below the sum agreed on, were proved or offered to be proved on the trial. Nothing was left to inference or presumption, and it was virtually conceded that the onus of the defence rested on the defendant. They are also cases in which the plaintiffs had either earned or received money from others during the time when they must have been employed in fulfilling their contract with the defendants, or in which they might have earned it in a business of the same character and description with that in which they had engaged with the defendants to perform. The principles established by the cases referred to seem to me to be just, and although I have found no case in which they have been applied to such an engagement as that between these parties, still I should have no hesitancy, where the facts would allowitto be done, to apply them to such a case as this. But, first of all, the defence set up should be proved by the one who sets it up. He seeks to be benefited by a particular matter of fact, and he should therefore prove the matter alleged by him. The rule requires him to prove an affirmative fact, whereas the opposite rule would call upon the plaintiff to prove a negative, and therefore the proof should come from the defendant. He is the wrong doer, and presumptions between him and the person wronged should be made in favor of the latter. For this reason, therefore, the onus must, in all cases, be upon the defendant. Had it been shown in the case at bar thatjfie plaintiff, after his dismissal, had engaged in other business, that might very well have reduced the amount which the defendant otherwise ought to pay. For this the cases I have referred to would furnish sufficient authority. But here it appears that the plaintiff was not occupied during any part of the time from the period of dismissal to the close of the year. Again: had it been shown, on the trial, that employment of the same general nature and description with that which the contract between these parties contemplated had been offered to the plaintiff, and had been refused by him, that might have furnished a ground for reducing the recovery below the stipulated amount. It should have been business of the same character and description, and to be carried on in the same region. The defendant had agreed to employ the plaintiff in superintending a rail road from Albany to Schenectady, and they cannot insist that he should, in order to relieve their pockets, tak’e up the business of a farmer or a merchant. Nor could they require him to leave his home and place of residence to engage in business of the same character with that in which he had been employed by the defendant.” Such are some of the reasonings and some ol the authorities on which the rule of damages which we have recognized, is based and sustained. The case at bar is fairly within the rule. The employer was not in fault, nor was the employee. The crop was overflowed and destroyed by an unusual rise of the Mississippi river, and the services of the overseer were no longer needed; no other reason was shown for the discharge. A short time after, a day or two, he obtained other employment of the same character and description, in the same region of country, for the balance of the year, and, at the time of the trial of this cause in the court below, a portion of his wages had been paid him by his second employer. Damages are, in general, and especially when the breach of the contract, for which they are sought to be recovered, has arisen from unforeseen and uncontrolable events, unmixed with selfishness and fraud, by way of full indemnity only, and while the rule in respect thereof, which we have recognized as applicable to the case before us, restrains them within the limits indicated, it by no means goes to the length of making any farther claim to the earnings of the innocent party, during the period of the stipulated employment, than that these shall be justly and fairly considered by the jury in fixing the indemnity to be awarded by their verdict. In the case at bar, while there was so much direct testimony of facts, that, unrebutted, necessarily reduced the amount so much below the whole stipulated price for the whole year’s employment, and no testimony showing selfishness, fraud, or insolvency, of the second employer, or other fact to be considered, in the opposite scale, from which it might seem that the finding had been against the preponderance of testimony only. Or the contrary, it being perfectly manifest that the verdict was found directly in the face of the law and the testimony, from which prejudice or partiality, at least, may be inferred, the court below therefore erred in overruling the motion of the defendant below for a new trial; and, for this error, the judgment must be reversed, and the cause remanded to be proceeded in not inconsistently with this opinion.