JAMES BAILEY & others *v.* FRANKLIN H. DAMON & others.

Where goods are wrongfully taken from a vessel by the shipper before she has broken ground on the voyage, the shipowner is not entitled to the stipulated freight, as such, but to an indemnity for the breach of the contract. And if the vessel is a general ship, and the goods removed form only part of her cargo, and the shipowner is bound by contracts with other shippers to perform the proposed voyage, and does perform it, the measure of damages is the stipulated freight, less the substituted freight actually made, or which might have been made by reasonable diligence.

ASSUMPSIT on a contract in writing, dated the 7th of February 1850, whereby the defendants agreed to ship, and the plaintiffs to transport seventy five thousand feet of lumber from Boston to Sacramento City, California, at $85 per thousand and five per cent. primage. Writ dated May 26th 1850.

Trial before *Merrick*, J. at November term 1853, when the plaintiffs introduced evidence tending to show that they got the vessel ready to receive her cargo, and the defendants immediately put on board 78,875 feet of lumber, the stowing of which was completed on the 26th of March 1850, and which made about three quarters of a cargo for the vessel; that she lay at the wharf, with the defendant's assent, until the 21st of May, when the defendants took away their lumber; and that by this act of the defendants the vessel was delayed, in procuring other freight, until the 15th of July, when she sailed for San Francisco.

The plaintiffs also offered evidence that, in place of the defendants' lumber, they carried some goods for other persons at a lower rate of freight, and some lumber on their own account, their net earnings upon which were less than the rate of freight agreed to be paid by the defendants. To this evidence the

defendants objected; but the judge admitted it, for the purpose of showing how much the plaintiffs ought to deduct from the damages occasioned by the loss of the freight of the defendants' lumber; and instructed the jury that the plaintiffs were entitled to recover the amount of freight and primage which they would have earned if they had taken the defendant's lumber to Sacramento, adding the demurrage for the time they were delayed to obtain other freight, and deducting the freight they received from other shipments of goods of other persons, and their net earnings on their own shipments.

The jury returned a verdict for the plaintiffs, and assessed damages at $6,020.75. The defendant moved for a new trial on the ground that these rulings and instructions were erroneous.

*R. H. Dana, Jr.* for the defendants. This is not a case for dead freight subject to salvage. The voyage had not commenced; the plaintiffs had acquired no lien on the defendant's goods; and it does not appear that they were under any obligation to go to California. The freight was payable by the defendants on the fulfilment of the contract by the plaintiffs, and they could not entitle themselves to it by merely showing their readiness to commence the transportation. The rule of damages is the same as if the plaintiffs had abandoned the voyage, namely, the loss to them at the time of the breach. In ascertaining this loss, the contract price is introduced, not as a debt in which they have a vested right, but as an element in computing the value of the contract to them at that time. *Puller* v. *Staniforth,* 11 East, 232. *Bell* v. *Puller,* 12 East, 496, *note.* *Puller* v. *Halliday,* 12 East, 503. *Smith* v. *Wilson,* 8 East, 437. *Chamberlin* v. *Mc Callister,* 6 Dana, 352. *Shannon* v. *Comstock,* 21 Wend. 457. *Durkee* v. *Mott,* 8 Barb. 423. *Fox* v. *Harding,* 7 Cush. 516. *Philadelphia, Wilmington & Baltimore Railroad* v. *Howard,* 13 How. 344. If the plaintiffs are entitled to the whole freight, deducting only what they have actually earned by substituted freight, then, if this case had been tried soon after the date of the writ, they would have recovered the whole amount, without any deduction. At all events, the evidence of the net profits on the commercial adventure of the

plaintiffs, which was purely a collateral enterprise, should not have been admitted.

*R. Choate & S. C. Maine*, for the plaintiffs. This vessel was a general ship, put up for foreign commerce; the plaintiffs had received the lumber into their vessel, and thus commenced the performance of the agreement; the defendants wrongfully took away their lumber, and are therefore liable for the full freight; and the fact that the vessel had not then actually broken ground can make no difference. The defendants cannot, by their wrongful breach of their contract, impose on the plaintiffs the duty of obtaining other freight for the defendants' benefit. The most that can be allowed to the defendants is a deduction of the amount actually earned by the plaintiffs by the use of that portion of the vessel which the defendants' goods would have filled. *Heckscher* v. *McCrea*, 24 Wend. 304. *Bork* v. *Norton*, 2 McLean, 426. *Jordan* v. *Warren Ins. Co.* 1 Story, 342. *The Nathaniel Hooper*, 3 Sumner, 542. *The Angerona*, 1 Dods. 382. Abbott on Shipping, (5th Amer. ed.) 595. Sedgw. Damages, (2d ed.) 377.

DEWEY, J. This case is put by the plaintiffs upon the grounds upon which damages are given on a contract to ship goods to a given port, when, through the default of the shipper, the goods, although the voyage is commenced, do not reach the port of discharge. In such cases, as appears well established by the cases cited by the counsel for the plaintiffs, the entire freight is earned, and must be paid by the shipper. The next inquiry is whether the case at bar is of like character? It was urged in the argument, that placing the goods on board ship preparatory to sailing was equivalent to the actual commencement of the voyage in its consequences as to the right of the carrier to recover full freight. We find no authority for that position. Indeed the rule as to what constitutes the commencement of a voyage, in reference to liability for freight, is well settled otherwise. That rule is, that the voyage commences upon breaking ground for the voyage, and not before. *Curling* v. *Long*, 1 Bos. & Pul. 636. *Burgess* v. *Gun*, 3 Har. & Johns. 225. Smith's Merc. Law, (Amer. ed.) 308. No freight is due before the commencement of the voyage, and no lien exists therefor.

The case of the plaintiffs is not therefore one of a voyage commenced, and a subsequent prevention of the carriage of the goods to the port of delivery through the default of the shipper. It is a case of an executory contract to ship goods, which the shipper refuses to fulfil on his part. The defendants agreed to ship on board the plaintiffs' vessel seventy five thousand feet of lumber for California, and to pay the plaintiffs a stipulated sum for the same. The plaintiffs aver that they were ready to perform their contract, but were prevented by the acts of the defendants. Assuming this to be so, the further inquiry is, what is the rule of damages in such case ?

The measure of damages is full indemnity for all they have lost through the default of the shippers. The mode of ascertaining the amount of damages for a breach of an executory agreement must of course differ in different classes of cases. If it were a contract to employ the plaintiffs to build a house, and pay them an agreed price for the entire work, and the defendants had prevented the performance, the proper rule would seem to be the difference between the sum agreed to be paid, and the sum that it would have cost the plaintiffs to perform the contract. That rule does not meet the cases of contracts for freight, as they are generally made. It does not meet the case of a vessel engaged in carrying merchandise generally for all who may apply, and making up her cargo from various owners of goods. Such ship usually must sail on or about a given day, to fulfil her other contracts, thus leaving no time or opportunity to fill up the deficient cargo, and also necessarily incurring all the expenses that would have been incident to the voyage, had the shipper fulfilled his particular contract to furnish a certain amount of goods for the voyage.

On the other hand, if the shipper's contract were to fill the entire ship with his goods at a certain freight, upon his refusal or neglect to fulfil his contract, the carrier might abandon the whole voyage, and engage in some new adventure equally or more profitable, and thus all future expenses incident to the first voyage be saved. Here it is quite obvious the damages would be much less than in the case of a voyage that must be per-

formed notwithstanding the failure of a single individual cus-
tomer to ship his goods according to his contract.

So, too, if under no obligation to other shippers to sail at a
given day, or if that day was so remote, and the demand for
transportation of goods such as to afford full opportunity to fill
up the ship before the day of sailing, these circumstances would
materially affect the amount required to be paid by the shipper
to the carrier, to indemnify him for the non-performance of the
contract on his part.

It seems therefore proper that all the attendant circumstances
be brought before the jury in each particular case, to enable
them to estimate the proper sum to be awarded as damages for
a breach of contract of this nature.   The carrier is to receive full
indemnity for the breach of contract on the part of the shipper.
He is to be made as good, in a pecuniary point of view, as if the
shipper had furnished the goods according to his contract, if the
carrier has been guilty of no laches as to substituting other
freight, or adopting other available arrangements to mitigate
the loss, or avoid the expenditure incident to the proposed voy-
age.   But if by proper and reasonable efforts he can substitute
other goods, he is bound to do so, and, to the extent of the freight
thus received, this should go in reduction of the damages.   Nor
is the reduction necessarily confined to his receipts from goods
actually substituted.   The carrier may have been remiss in his
attempts to fill up his ship, or have neglected to avail himself
of opportunities presented by other offers of goods, and if guilty
of negligence in these respects, this may be a ground for a de-
duction from the entire sum stipulated to be paid by a shipper for
freight of certain articles, which were not furnished to the carrier.

It may be also that the carrier was under no obligation to
others to prosecute the proposed voyage, and might have aban-
doned it for another and more profitable employment of his ship;
and in such case he should not pursue the original voyage for
the mere purpose of charging the defaulting shipper with the
gross sum he stipulated to pay for transporting his goods to a
distant port.

It will be perceived, therefore, that a somewhat broader lin

of defence should have been permitted to the defendants, than that prescribed at the trial. It is true that the plaintiffs are entitled to the full benefit of their contract, and to the entire damage they have sustained through the default of the defendants. But the sum the shippers stipulated to pay for freight is subject to be reduced by money actually received for substituted freight, and also by the amount which the carrier might have made, had he availed himself of all proper opportunities to fill up the vacancy and to mitigate the loss that would attach to the shipper by the payment of the entire sum stipulated to be paid for freight.

See, on this subject, *Heckscher* v. *Mc Crea*, 24 Wend. 304 *Shannon* v. *Comstock*, 21 Wend. 457; *Costigan* v. *Mohawk & Hudson River Railroad*, 2 Denio, 610; Abbott on Shipping, 411; Sedgw. Damages, 361. *New trial ordered.*

A new trial was had at this term, and resulted in a verdict of $3,052.99 for the plaintiffs.