Polk v. Daly.

Judgment reversed.

---

## Josiah B. Polk *v.* Augustin Daly.

Plaintiff was engaged to perform as an actor at a certain theater for a definite time, and at a fixed salary, but was discharged before the period for which he was engaged had elapsed. He denied the defendant's right to discharge him, and offered performance on his part, which was not accepted. He then left the city and remained absent until the period for which he was engaged had expired, and did not, during that period, hold himself in readiness to render his services according to the contract, nor did he make any efforts to obtain other employment. *Held*, that he was not entitled to recover anything but the wages due him up to the time of his departure.

Appeal by defendant from a judgment entered on the verdict of a jury.

Action for wages. The facts are stated in the opinion.

*Richard M. Henry*, for appellant.

*E. Louis Lowe*, for respondent.

BY THE COURT.*—ROBINSON, J.—This action was on a contract for the plaintiff's services as an actor in defendant's theater, from September 15th, 1870, to June 1st, 1871, at a salary of $65 a week and a benefit, to consist either of one-third the gross receipts, or the net proceeds of the benefit night's receipts.

It was brought in September, 1871, and the plaintiff, in his complaint, alleged he was wrongfully discharged on the 4th of April, and that he was unable thereafter to procure other employment. He did not, however, allege performance or a tender thereof, or a readiness to perform any service during the period for which such salary is claimed, but asked to recover, *firstly*, salary of $65 per week for eight and a half weeks, and, *secondly*, the sum of $300 for the night's benefit, of which he claimed to have been deprived by defendant's refusal to afford it to him. The answer, after a general denial as to other matters, admitted the contract; justified the discharge under an alleged breach of plaintiff's obligations by his refusal to perform parts in plays or characters assigned him; alleged that plaintiff thereupon left the city, and remained in or near Baltimore, in the State of Maryland, during the remainder of the season, and did not, at any time after his discharge, perform or offer to perform his contract. The jury, under unexceptionable instructions from the court in that respect, found the plaintiff was justified, under his contract of service with the defendant as an actor, in refusing to act in a part assigned him inferior to the *rôle* of characters which he had agreed to represent, and that he was discharged from his employment without just cause. For this he was awarded in the court below $688 10 as compensation at the contract rate ($65 per week), as for full performance, with some addition for the benefit.

Upon his discharge on the 4th of April, the plaintiff, by letters of the 4th and 6th of that month, denied defendant's right to discharge him, and offered performance on his part, which was not accepted. "About a week afterwards he left the city and went to Baltimore, and for the remainder

* Present, DALY, Ch. J., ROBINSON and LOEW, JJ.

of the period of his engagement spent his time there or in Virginia. He went a-fishing." Subsequent to his discharge he made no effort to get any other employment in his line of business. The justification he offers for this is, "It was *not very easy* to secure employment after the 4th of April. The season in New York theaters had *almost* expired, and they don't engage actors then. *I don't think* I could have got employment of my standing in any theater." Among other grounds for the motion to dismiss the complaint were these: That it appeared from the evidence that the plaintiff made no sufficient tender or offer of his services under the contract; that he made no effort to secure other employment, and placed it out of his power to receive employment from the defendant and others. These several grounds of dismissal were overruled, and defendant excepted. At the conclusion of the testimony, defendant's counsel asked the court to charge; that the plaintiff, by leaving the city, rendered it impossible for the defendant to employ him, and to this the court responded, "If you (the jury) are satisfied that he absented himself *to avoid the engagement*, then he cannot recover." To this qualified charge no exception was taken. Defendant's counsel further requested the court to charge, "that the plaintiff should have applied for employment elsewhere, and cannot recover if he neglected to do so." This was refused, and defendant excepted. Under such circumstances, I am of the opinion the judgment cannot be sustained. First, plaintiff was not entitled to recover either wages *for services rendered*, during the eight weeks following his discharge, or damages ensuing from his unlawful discharge, computable upon the rate of such weekly wages, except upon the assumption that he made and sustained such a tender of performance as was equivalent to actual performance. In a week after his discharge he left the city for the southern States, and for all the subsequent period of his engagement, was absent at the South, and in no way tendered his services, or rendered himself subservient to the objects of the contract, or to any such use of his services as it contemplated. It could, in no respect, be held that he earned wages for services actually rendered in the em-

ployment of the defendant when he was engaged in his own pursuits or amusements at the South, without having obtained any consent or license of the defendant, or having given the defendant any notice of his remaining subject to immediate recall when wanted, or in some other way offering or continuing a *tender of his services* during this period. There are certain contracts in respect to which *tender* of performance is deemed equivalent to performance, so as to entitle the party ready to perform, to sustain an action for such compensation as full performance would have insured to him ; to wit, as upon an agreement for the sale and purchase of real estate, where the vendor has tendered a conveyance (*Shannon* v. *Comstock*, 21 Wend. 460 ; *Richards* v. *Edick*, 17 Barb. 260, and cases cited p. 265) ; or for goods sold, delivery whereof has been tendered (*Bement* v. *Smith*, 15 Wend. 493 ; *Dustan* v. *McAndrew*, 44 N. Y. 78, and cases cited). But that the tendered performance should stand as a substitute for the actual, can only be maintained upon the ground that the thing agreed to be sold has been in independent existence, and, the *corpus* not being perishable or changeable, the title has so far passed that the vendor remains but the trustee of the vendee in respect to it, and on subsequent payment of the price, the *specific thing* may still be delivered over or duly accounted for to the vendee (*Shannon* v. *Comstock, supra*). On such a tender the vendor assumes to preserve with ordinary care the thing agreed to be conveyed ready for transfer, on compliance by the vendee with the terms of purchase (unless he chooses to exercise his right to sell under his vendor's lien), and any inconsistent use or diversion of it amounts to an abandonment of the tender. If there exists any analogy in a contract for the hire of services, where the employee has been unjustly discharged, his tender and continued offer and readiness to perform them, and his reasonable efforts to obtain other employment, or his entry *in good faith* into other employment, are necessary to constitute any similitude by *way of a constructive performance* and a rendition of such complete service to the purposes of the contract as it calls for on his part.

There are some questionable authorities for holding such

constructive service equivalent to actual performance, and entitling the employee to accruing wages; but, *as in all cases of tender*, it is necessary, in order to constitute it a substitute for actual performance, that it should be maintained; as the employer has a *locus pœnitentiæ*, and in avoidance of questions of responsibility may at any time, while the tender is preserved, accept performance. In the present case, the departure of the plaintiff from the city and his absence for the eight weeks in Maryland and Virginia, engaged in his own pursuits, without notice to defendant of his whereabouts or address, or of being subject to immediate recall, was not the maintaining of any such tender, nor did it show a case of readiness at all times, during the period of the contract, to render the service for which the plaintiff had contracted. *Secondly.* In all cases of breach of contract, it becomes the *active duty* of the party injured to make reasonable exertions to render the damages resulting therefrom as light as possible. The Court of Appeals, in *Hamilton* v. *McPherson* (28 N. Y. 76), say: "The law for wise reasons imposes upon a party subjected to injury from a breach of contract the *active duty* of making reasonable exertions to render the injury as light as possible. Public interest and sound morality accord with the law in demanding this; and if the injured party, through negligence or wilfulness, allows the damages to be unnecessarily enhanced, the increased loss falls upon him, and he can recover nothing for damages which, by reasonable diligence on his part, could have been prevented." (p. 77). So, also, in *Dillon* v. *Andrews* (43 N. Y. 237), they say: "It was the duty of the plaintiff, as soon as due notice was given, to have so acted as to save the defendant from further damages, so far as was in his power." Without questioning that the burden of proof of failure in this respect was thrown upon the defendant to show by way of *recoupment*, or in mitigation of damages, the neglect of the plaintiff to make any effort to get other employment, the absence of any such effort appeared in his own testimony and was conceded. His statements in extenuation, that it *was not very easy* to procure such other employment, and he did *not think* he could have got similar employment, presented no justification for his entire

omission to make any effort whatever. His obligation in that respect was one of *ordinary* but *active* diligence, and his conduct suggests the natural inquiry, whether, if he had been discharged for cause, he would, under the usual exigencies of life and its claims upon him, to act with diligence and caution in earning a livelihood or making his talents available and profitable, have for eight weeks abandoned every effort to secure any employment, or to earn any money in the line of his profession, and "go a-fishing?" Common sense fully answers the question. If voluntarily idle, he failed in his legal and moral duty, as the law regards such conduct "a fraud upon his employer" (*Shannon* v. *Comstock, supra; Huntington* v. *Ogdensburg & L. C. R. R. Co.* 33 How. 416). If intending to insist on a continuing, although constructive, performance, and a right to recover as for full compensation under the contract, he could not accept the employer's dismissal as a license to indulge in a relaxation of its requirements and go about his own business. The motion for a nonsuit made substantially on this ground, at the close of plaintiff's case, was renewed at the end of the trial, in a request to the judge to charge the jury, and substantially presented both the previous questions.

*Thirdly.* The plaintiff's discharge did not, as a matter of law, entitle him, on the expiration of his term of service, to recover the full price for the whole period. The defenses arising from his departure for Maryland, and his continued absence at the south; and his failure after his discharge to attend at the theater, or to apply for employment elsewhere; or to maintain any continuous offer to perform, were set up by the answer and distinctly proved. The absence of any such tender of services or readiness to perform for eight weeks after he was discharged, disentitled him from such a recovery for services rendered during that period at the contract rates, as has been awarded. There had been much question whether the employee unjustly discharged, but tendering performance, may maintain his action on the contract for accruing wages, or is confined to his single remedy for damages for the unjust dismissal. This subject has been most ably and elaborately examined by C. J. Daly in *Moody* v. *Leverich*, decided at the present term, *ante*, p. 401, (in which I

Polk v. Daly.

concurred), sustaining the latter view of the law, and must be regarded as settling the question, so far as this court is concerned. While there may be authorities asserting more or less broadly the right of the employee illegally discharged, on maintaining tender of his services, to recover compensation from time to time as wages would become due under the provisions of the contract (see cases reviewed in *Moody* v. *Leverich*), none of them assume to afford such right of recovery to one who abandons the sphere of his employment and adopts other pursuits, for his own profit or pleasure.

*Fourthly.* Notwithstanding the want of a formal exception to the refusal of the judge to charge as requested, "that plaintiff, by leaving the city, rendered it impossible for the defendant to employ him," the facts of the case clearly show that plaintiff, by his departure and abiding at the south for the period of time shown, relinquished his employment and disentitled himself from any recovery after he left; and as the point had been previously taken on the motion to dismiss the complaint, the court on this appeal is required "to give judgment according to the justice of the case, without regard to technical errors and defects which do not affect the merits" (Code, § 366). Those merits, on the pleadings and proofs in the case, in my opinion, debarred the plaintiff from the recovery of any definite sum beyond the $18\frac{58}{100}$ tendered or offered.

For these reasons the judgment should be reversed, subject to plaintiff's acceptance of that amount.

Judgment reversed.