(162 App. Div. 203)

FULTON v. CANNO et al.

(Supreme Court, Appellate Division, Third Department. May 6, 1914.)

1. CONTRACTS (§ 321*)—RESCISSION—BREACH.
   While defendants had no right to rescind a contract while plaintiff was faithfully performing his part of it, defendants were entitled to refuse to further perform and pay such damages as plaintiff might sustain therefrom.
   [Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 1508–1527; Dec. Dig. § 321.*]

2. SALES (§ 182*)—PERFORMANCE OF CONTRACT—QUESTION FOR JURY.
   Where, under contract to purchase skim milk from a creamery, defendants installed vats in the creamery to receive the milk from the separator, and employed a cheese maker to receive the milk and manufacture it into cheese, and, after they had notified plaintiff that they would go no further with the contract, still maintained the cheese maker at the factory, who under their instructions from day to day disposed of the milk, whether defendants had breached their contract, or were receiving milk under it notwithstanding their notice, was for the jury.
   [Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 492–495; Dec. Dig. § 182.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date. & Rep'r Indexes

3. SALES (§ 131*)—RESCISSION OF CONTRACT—DUTY OF SELLER.
    Where, pursuant to a contract for the purchase of skim milk from a
    creamery, defendants installed vats in the creamery to receive it, and a
    cheese maker to manufacture it into cheese, and thereafter notified plain-
    tiff that they would no longer comply with the contract, but did not re-
    move the tanks or cheese maker, and notified plaintiff not to use the
    tanks, plaintiff was not obliged himself to remove them, especially while
    the cheese maker remained in charge of them as defendant's agent.
    [Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 325-327; Dec. Dig.
    § 131.*]

    Smith, P. J., and Howard, J., dissenting in part.

Appeal from Trial Term, Sullivan County.

Action by Arlington P. Fulton against Max Canno and another,
trading as Canno's Dairy. From a judgment for plaintiff, and from an
order denying defendants' motion for a new trial, they appeal. Af-
firmed.

Argued before SMITH, P. J., and KELLOGG, LYON, HOW-
ARD, and WOODWARD, JJ.

Arthur C. Kyle, of Monticello (Ellsworth Baker, of Hurleyville, of
counsel), for appellants.

John D. Lyons, of Monticello, for respondent.

JOHN M. KELLOGG, J. By written agreement of December 15,
1911, the defendants purchased all the pure skim milk from the plain-
tiff's creamery, for one year from December 1st, at 23 cents per can
of 40 quarts, to be placed in the defendants' cans at the creamery until
April 1st following, after which date the defendants might elect to re-
ceive it in the same manner, or they could instruct the plaintiff's but-
ter maker how to make it into pot cheese at the creamery, without
added expense to the plaintiff, the defendants furnishing the tanks
and fixtures therefor, in which case the plaintiff was to receive 25
cents per can, and if the cheese was not satisfactory the loss should be
the defendants'.

Finding it difficult to remove the milk from the creamery to the
place where they were to make the pot cheese, in January defendants
obtained a modification of the contract, which the jury have found to
be as follows: The plaintiff was to remove certain of his machinery
and appliances, and fix the floor of the creamery so that the defend-
ants could install two tanks, with a capacity of 600 gallons, each tank
being 16 feet long and 3½ feet wide. That defendants were to put in
a cheese maker of their own, and receive the milk into the tanks as it
came from the separator, and to cover the expenses in fixing the build-
ing, and for its use and for the trouble in having the cheese made
there, the plaintiff was to receive 25 cents per can, instead of 23 cents.
From January until June 21st the contract was performed in that
manner. Cole was the defendants' butter maker and representative
at the factory. On the latter date the defendants wrote the plaintiff
that they would go no further with the contract. They, however, left
their tanks in position and connected with the separator, and their
cheese maker remained at the factory in charge of them, and from

day to day, when the tanks became full, he opened them and allowed the milk to run into the whey vat.

[1, 2] The plaintiff was faithfully performing his contract, and the defendants had no right to rescind it. Nevertheless the defendants had the right to refuse to go any further with the contract, and were liable to pay such damages as the plaintiff might sustain. The fact that the defendants had written the plaintiff that they would go no further, and the fact that they still occupied the space in the creamery with their tanks connected with the separator, and that their agent remained in charge, disposing of the milk from day to day, rendered the defendants' position somewhat ambiguous, and it was a clear question of fact for the jury to determine whether the defendants had breached their contract or were receiving milk under it. The case was submitted to the jury fully and fairly on that theory. In the charge the jury was directed to find for the defendants, unless it determined that Cole was the defendants' agent and that the defendants accepted the milk under the contract after June 21st. The case was not for damages for the breach of a contract, but proceeded solely upon the theory that the plaintiff had fully performed and that the defendants had accepted such performance.

[3] After notifying the plaintiff that they would break the contract, defendants had the right to change their minds and observe it. They notified the plaintiff that he must not use the tanks, and by occupying the space in the factory they prevented him from using it. He was not obliged to remove their tanks, especially while their agent remained in charge of them. If the defendants unequivocally had refused to receive the milk, and had removed their tanks and agent from the factory, it is clear that the plaintiff could not discharge the milk upon the ground and recover the purchase price from the defendants. · That would not be the legal measure of damages. Apparently the value of the milk was 23 cents per can. The plaintiff was to receive 2 cents per can for the expense incurred in putting the factory in shape for the defendants and for the privileges given them therein. The complaint alleges all the facts, and, in any event, the plaintiff was entitled to recover 2 cents for each can of milk produced. But the evidence tended to show that the defendants accepted the milk, and the jury has so found. That was the only question in the case. No error of law was committed. The defendants were acting unreasonably and unfairly in notifying the plaintiff they would not receive the milk. Their conduct is without reasonable excuse. The verdict is fairly sustained by the evidence. I therefore favor an affirmance.

Judgment and order affirmed, with costs. All concur, except SMITH, P. J., writing for modification, in which HOWARD, J., concurs.

SMITH, P. J. (dissenting). This action was brought to recover the contract price of skim milk alleged to have been delivered to appellants from June 16 to August 15, 1912. The respondent operated a creamery at Ferndale, N. Y., and had contracted with appellants to furnish them with skim milk for cheese making for one year at a certain price. The cheese was manufactured in respondent's creamery,

but in vats and with fixtures owned by appellants. On June 21, 1912, the appellants sent to respondent from Brooklyn two registered letters stating that they would not accept any further deliveries under the contract. These letters were presumably received June 22d. The respondent continued, however, to deliver the skim milk to the cheese maker Cole; same was put in the appellants' vats, but no cheese was made therefrom and the milk was afterwards wasted and lost. This continued to August 15, 1912. In this action plaintiff has recovered the value of the skim milk thus claimed to have been delivered from June 16th to August 15th at the contract price. The judgment also includes certain items, amounting to $14.28, which do not seem to have been disputed.

After the rescission of the contract by appellants the respondent was not authorized to continue to deliver this milk. It is contended in his behalf that Cole, the cheese maker, was in the employ of the defendants, and a delivery to Cole was a delivery to defendants. Whether or not Cole was in the employ of the defendants at that time is immaterial, as the rescission of the contract clearly operated as a revocation of his authority to receive the milk for the defendants. Plaintiff's duty upon the rescission was to use reasonable means under the circumstances to reduce the loss. "He cannot stand idly by and permit the loss to increase, and then hold the wrongdoer liable for the loss which he might have prevented." 13 Cyc. 71. See, also, Shannon v. Comstock, 21 Wend. 457, 461, 462, 34 Am. Dec. 262; Schleicher v. City of Mt. Vernon, 107 App. Div. 584–586, 95 N. Y. Supp. 326; Carter Co. v. Fischer (Sup.) 121 N. Y. Supp. 614. It appears in the evidence that soon after this rescission plaintiff had an offer from third parties to purchase this skim milk, which he declined to accept. No question is suggested as to the responsibility of the parties offering to purchase or as to the good faith of the offer, and the price is not named. It was clearly the duty of the plaintiff after this rescission to have availed himself of this offer and to have reduced his damages thereby, and for failure to do so he has forfeited his right to recover for such damage, or at least for such amount as he might have obtained by the acceptance of such offer. If plaintiff had been diligent to protect himself he might have been fully recouped after the offer by the sale of this milk to these third parties.

For the skim milk delivered between June 16th and June 22d, however, the plaintiff is clearly entitled to recover. From the course of dealings it may be fairly assumed that the daily deliveries averaged about the same for this month. The value of the milk at the contract price from June 16th to July 1st amounted to the sum of $123.36. Assuming the average daily delivery to be the same, the contract price of the milk delivered from June 16th to June 22d would amount to $49.50. Adding to this the $14.28 admitted to be due for other items, makes the sum of $63.78, the amount which the plaintiff is clearly entitled to recover in this action.

HOWARD, J., concurs.