CONVERSE, Administrator *v.* WARREN.

Where the return to an original notice read as follows: " Served the within notice on the within named F. H. W., by leaving a true copy with E. H. T., he being over fourteen years of age, at the banking-house of G. T. & Co., being the place of business of the defendant. Also, a copy with Mrs. G. at defendant's boarding-house, being the residence of E. E. G. And also, a copy at his sleeping room, over the store of R. S. A., by order of plaintiff's attorneys, this 13th day of April, 1855—the above-named Mrs. G. being over fourteen years of age, and being a member of the family of E. E. G.;" and where at the term of the District Court to which the notice was returnable, the defendant appeared specially, and moved to set aside the return, which motion was overruled by the court; *Held,* 1. That the return was defective in not showing that the house of E. E. G. was the usual place of residence of the defendant, and that Mrs. G. was a member of defendant's family; and 2. That the court erred in overruling the motion.

Where an original notice is served by leaving a copy at the usual place of residence of the defendant, the return must show that the person with whom the copy is left, is a member of the *same* family with the defendant.

The words, "the family," in section 1721 of the Code, mean the family of which the party on whom the service is made, is a member.

Where a defendant has taken objection to the defective service of process, in the proper time and manner, and his objection is overruled, and he required to plead to the action, he does not waive or lose the benefit of his objection, by appearing and pleading. WRIGHT, C. J., *dissenting.* .

Such an appearance must be considered to have been made under protest, and subject to the exception taken to the decision of the court on the objection to the sufficiency of the service.

Where a defendant, at the first term after the commencement of the suit, after his motion to quash the return on the original notice, on the ground of insufficiency, had been overruled, filed his answer, and applied for and obtained a continuance; and where at the second term, the cause was again continued, to afford time to obtain the sworn reply of the plaintiff, called for by the defendant; and where at the third term, the cause was tried, and judgment rendered against the defendant; and where the defendant, on appeal to the Supreme Court, assigned for error the decision of the court, overruling the motion to quash the return on the original notice; *Held*, That if the defendant had been driven into a trial at the first term, he would have been authorized to raise the question as to the sufficiency of the return, in the appellate court; but that having had, to prepare for trial, more than all the time he would have obtained ordinarily, had the service been held insufficient, the overruling the motion to quash the return, was an error that worked no injury to the appellant, and of which he could not complain in the appellate court.

Where, in an action on a promissory note, the defendant objected to the note being offered in evidence, on the ground of variance between that declared on and the one offered—the alleged variance existing in the date of the note; and where, upon the question of variance, the plaintiff called the defendant, and obtained his testimony as to the date of the note; and where the counsel for the defendant, then inquired of the defendant, as to the consideration for the note, and his defence to it, which was objected to by the plaintiff, and the court sustained the objection; *Held*, That the objection was properly sustained.

## *Appeal from the Desmoines District Court.*

SUIT on a promissory note for two thousand dollars, given by defendant to plaintiff's intestate. The original notice issued in the cause, was returned by the sheriff in these words: "Served the within notice on the within named Fitz Henry Warren, by leaving a true copy with E. H. Thomas, he being over fourteen years of age, at the banking-house of Green, Thomas & Co., being the place of business of defendant. Also a copy with Mrs. Gay, at defendant's boarding-house, being the residence of E. E. Gay; and also a copy at his sleeping room, over the store of R. S. Adams, by order of plaintiff's attorneys, this 13th day of April, 1855. The above-named Mrs. Gay being over fourteen years of age, and being a member of the family of E. E. Gay." The

term of the District Court commenced on the 23d April, 1855. On the second day of the term, on motion of defendant, leave was given him to enter a special appearance, to test the sufficiency of the service of the original notice. A motion made to set aside the return as insufficient in law, was overruled, and the court decided the return good and sufficient in law of itself, to place defendant in court subject to plead. To which decision defendant excepted. At a subsequent day, defendant filed his answer, and on his motion the cause was continued until the next term. At the October term, 1855, the cause was again continued, in order to obtain the sworn replication of the plaintiff to the answer of the defendant. At the April term, 1856, after various intermediate proceedings, judgment was rendered for the plaintiff for $2,245.31, from which judgment the defendant appeals. The principal error alleged, is that the court erred in overruling the defendant's motion to set aside the sheriff's return. Such other errors as are assigned, are noticed in the opinion of the court.

*David Rorer* and *Browning & Tracy*, for the appellant.

1. The service of the original notice and return thereof, was insufficient to place defendant in court; and the defendant, by leave of the court, might well make a special appearance to move to set said return aside. The latter point was so adjudged by this, the Supreme Court of Iowa, in the unpublished case of *Nathan S. Millburn* v. *William Fouts.* See, also, *Pilkey* v. *Gleason,* 1 Iowa, 85; *Wynn* v. *Wyatt,* 11 Leigh, 584; *Lutes* v. *Perkins,* 6 Mis. 57; *Furguson* v. *Ross,* 5 Pike, 517; *Cobb* v. *Decker,* 1 South, 119. The defendant did make such special appearance by leave of the court, and move to set said return aside, which motion was overruled, and the return adjudged good and sufficient to place defendant in court.

Next, then, under this division of the subject we will look into the return, and will test its sufficiency by the statute and adjudged cases. By the Code, service must be personal, if defendant is found. Section 1721, 252. If not

Converse, Administrator v. Warren.

found, service may be made "by a copy left at his usual place of residence, with some member of the family, more than fourteen years of age." Code, § 1721, 252. First, then, the return in this case does not show, that defendant was "not found," and without such showing, a service by copy is not valid; for they are not independent and alternative modes of service, but the one, to be valid, must depend upon the impracticability of the other. The sheriff cannot choose between the two modes. There is, in law, a third mode of service—it is by publication; and yet such service cannot be made until after return of not found. There is an adjudged case bearing on this point, but not parallel; it is *Lodge* v. *State Bank*, 6 Blackf. 557.

The next objection to the return is, that even if a case existed, wherein legal service could be made by copy, yet the service shown by the return is totally insufficient. By the statute, the copy is to be left at his usual place of residence, with some member of the family, over fourteen years of age. The return shows several efforts: One, "by leaving a true copy with E. H. Thomas, he being over fourteen years of age, at the banking-house of Green, Thomas & Co., being the place of business of defendant." Surely this does not fill the requisites of the statute; nor does it appear but defendant was present, or had a place of residence within the bailiwick. The next effort is, by leaving " a copy with Mrs. Gay, at defendant's boarding-house, being the residence of E. E. Gay," she being "over fourteen years of age, and being a member of the family of E. E. Gay," not a member of defendant's family, as is evidently contemplated by the statute, the language of which is, " at his usual place of residence, with some member of the family," meaning the family of defendant. Neither is this one in accordance with the requirements of the statute. He cannot be said to reside at his boarding-house; for, in the same return, as we shall see, it is shown, that defendant had a sleeping-room at a still different place. The next and last effort is, by copy at defendant's "sleeping-room, over the store of R. S. Adams," left with nobody. Neither return, or effort of service, is

11

valid; nor are the whole of them any better, when taken together. Where a substitute for personal service is provided, it must be strictly followed. *Romaine* v. *Commrs. of Muscatine Co.*, Morris, 357; *Diltz* v. *Chambers*, 2 G. Greene, 479; *Cross Ex parte*, 2 Eng. 44; *Spence* v. *Medder*, 5 Mis. 458; *Hays* v. *The Bank U. S.*, Wright (Ohio,) 563; *Smith* v. *Cohea*, 3 How. (Miss.) 35; *Tomlinson* v. *Hoyt*, 1 Smedes & Marsh. 515; *Fatheree* v. *Long*, 5 How. (Miss.) 661; *Wilson* v. *Greathouse*, 1 Scam. 174. And pleading over to the action, after the overruling such motion to set aside the return, is not a waiver of defendant's rights, under said bill of exceptions; nor is it a waiver of the insufficiency of the service. *Secrest* v. *Arnett*, 5 Blackf. 366; *Wells* v. *Hubbard*, 11 Ill. 573; *Buckingham* v. *McLain*, 13 How. 150.

In all the cases, within our reach, referred to, wherein the defendant is adjudged to have waived his rights, the defendant had taken no bill of exceptions, where the motion was made in time; and, in most of the cases, the motion was not made until after full appearance, and after pleading to the action. The defendant had a right to, not only notice, but to ten days' notice, before he could be considered in court. Now, if there was no service, there was not only no notice, but the ten days' time to prepare in, was wanting, although defendant or his counsel might really, in point of fact, be in or at the court, and the suit might otherwise come to their knowledge; whereas, the decision of the court, deciding that such defective service was compulsory on defendant, really had the effect to coerce defendant into a defence, without any prior time for preparation whatever. By the Code, the defendant might "except to any decision of the court." § 1805, 260. And it is insisted for the defence, that if such decision is found erroneous, that it will not only reverse the judgment, but will arrest the whole case at the very point where the error was committed; for, so far as the defendant remained in court, after said decision, overruling his motion to set aside the return, he was only there in law, by the wrongful and compulsory decision and requirement of

the court, and was only there in point of fact, in obedience to, and by consequence of, such decision.

The case of *Secrest* v. *Arnett*, 5 Blackf. 366, is even a stronger case than this, in favor of the plaintiff below, as it does not appear that exceptions were taken by the defendant in that case, to the overruling of his motion; and yet the court held, that the defendant's rights were not waived by pleading over. In that case, the defendant moved to dismiss for insufficiency in the writ. The motion was overruled. The defendant then plead to the action; the cause was tried, and judgment for the plaintiff. The defendant appealed. The Circuit Court, on the appeal, dismissed the suit on this motion of defendant, which was made before the justice of the peace. The plaintiffs then carried the case to the Supreme Court, who affirmed the judgment of dismissal. The Supreme Court in that case, say that, "The plaintiffs contend that the defect in the writ was cured by the plea before the justice; but we do not think so. The objection to the writ was made and overruled, before the appearance and plea to the suit. There was therefore no waiver of the objection." Now, this case is one so precisely in point, and from so high and so recent an authority, that it does seem to us conclusive. We have not obtained access to the original report of the case, cited from 11 Illinois, but believe it to be equally in point with the case from 5 Blackford.

In the case of *Buckingham* v. *McLain* 13 Howard, 150, though the motion was overruled, yet the case shows conclusively, by the opinion of the Supreme Court, that it was overruled, because a full appearance had been entered before making the motion; and that the motion would have been sustained, if made on special appearance for that purpose. The case of *Grace* v. *Palmer*, 8 Wheat. 699, is another, in which the doctrine we assert is sustained by implication. The court there say, "where the defendant appears, without taking the exception, it is an admission of the regularity of the service." But in the case under consideration, exception was taken in the first instance, and the appearance was special for that purpose. Waiver of rights is not

favored, unless clearly intended. *U. States* v. *Rathbone et al.*, 2 Paine C. C. 579.

2. The court should have permitted the whole evidence of the defendant, when he was introduced by the plaintiff, to go to the jury. The evidence of Mr. Coolbaugh, plaintiff's witness, had gone to the jury, and it was too late, after the defendant's evidence showed a just defence, for the plaintiff to say that such evidence was for the court and not for the jury. We contend, that the defendant having been called and introduced by the plaintiff, we then had a right to his evidence to the whole case, which the court ruled against us.

*Starr & Phelps*, for the appellee.

As an important and new question has been raised in this case, the decision of which is to govern the future practice of our courts, we ask leave to offer the following considerations in favor of the practice, which we believe to be founded in justice and reason. The question is, whether, under our system of practice, this court should reverse a cause for defective service, after an answer, and full trial of the case, on the merits, although the service was objected to, on special appearance of defendant, and the point saved by bill of exceptions, before answer filed, or general appearance made.

This is, we believe, the first time this question has been raised since the entire and radical change was wrought in the form and spirit of our practice, by the adoption of the Code. The adoption of the Code, was a new era in the jurisprudence of Iowa, and a work of necessity. In many respects, the common law had become so refined, by close adherence to, perhaps, ill-considered precedents, that justice was rather figuratively than actually dispensed, and many a meritorious claim was defeated, for want of a high degree of technical knowledge on the part of the suitor's counsel. This evil had become so glaring—so often had our courts been compelled, by a long array of authorities, to render decisions, for which they confessed they could find no reason, except precedents—that our legislature interfered to relieve them

Converse, Administrator v. Warren.

from those embarrassments, and appointed a commission, with full power to re-organize our system of procedure and practice, so as to secure to parties litigant a determination of their substantial rights, regardless of "immaterial variances, errors or defects." To this object, the commissioners directed their attention and efforts, and the legislature indorsed their action, by adopting substantially their reports, and by conducting their subsequent legislation, in the spirit of the Code.

It can but be apparent to all who have examined the Code, that its fundamental principle in the administration of justice, is, that all cases shall be tried upon their merits, and that in conducting them, all immaterial variances, errors and defects shall be disregarded. Code, §§ 1757, 1758. To this end, the District Court is expressly directed, and both the District and Supreme Courts are empowered, to adopt such rules as shall preserve the substance of previous remedies, dispensing with all needless forms, "with the view of arriving at the prompt attainment of justice." Code, §§ 1589–91. To say that sections 1757 and 1758, apply only to the District Courts, would involve the absurdity, that the District and Supreme Courts are to be governed by entirely different principles, in " arriving at the prompt attainment of justice."

Again : in construing the Code, its history is important. It is, we believe, generally understood by the profession, that our Code was adopted in the same spirit, and rests upon the same principle, which underlies the Code of Procedure of New York. Both were the creatures of the same necessity, and were adopted for the same purpose ; and this court is probably aware, that in the construction of our system, the Code of New York was carefully examined, and the same principle for determining the rights of parties was adopted, with such change in its details as the exigencies of our younger state, and the experience of the commissioners, dictated. New York and Iowa stand alone in this advance in the administration of justice; and to New York alone, can we look for authority upon the construction of civil

procedure in our Code. If there is any difference in the general spirit of the two Codes, it is in the greater liberality of our own, and that the former has, perhaps, specified what in ours is left to palpable inference.

In the same spirit, but with more particularity, the Code of New York, § 176, (*vide* Van Santvoord's Pleading, 531, 532,) provides : " The court shall, in every stage of an action, disregard any error or defect in the pleadings or proceedings, which shall not affect the substantial rights of the adverse party ; and no judgment shall be reversed or affected by reason of such error or defect." In commenting upon this section, Van Santvoord says : " It furnishes a single test in all cases—a broad and universal test—namely, that if the defect is such as, in the opinion of the court, will not affect the substantial rights of the adverse party, no matter in what that defect shall consist, the judgment will not be reversed or affected thereby. It is but applying to the action in its last stages, the rule which the Code designed to govern its commencement, and to regulate its proceedings throughout, namely, that the action is to be stated, tried and determined on its merits alone, and the substantial rights of the parties, and they alone, are to be regarded as controlling the administration of justice under the forms of law." It is true, that our Code does not contain the exact section which is above quoted from the New York Code, but has left its substance, as to the reversal of causes, to palpable inference ; and inferring the principle from the general spirit and expression of our Code, we are " but applying to the action in its last stages, the rule which the Code designs to govern its commencement, and to regulate its proceedings throughout."

Let us, then, apply this principle to the question before us. Is the defective service of the notice in this case, a material error, supposing, for argument's sake, that it is defective ? Apply to it the test laid down by Van Santvoord. Had this defect any, the remotest, influence upon the judgment ? Was the judgment obtained upon or by virtue of the original service ? Clearly not. The defendant had the

power and the right to stand upon his bill of exceptions, and had he done so, he would have had the full benefit of it; but he saw fit to come in voluntarily, and to do what, if the service was defective, we could not compel him to do— answer, get his case continued, to prepare for trial, and to enter upon, and go through, a full trial on the merits of his case; and he now seeks to reverse the whole case, and the judgment which his general appearance gave us, on the ground, that we did not, at a former term, bring him legally into court. Has he not had his day in court? Has he not had a fair trial? Was he forced into trial, without ample opportunity and time for preparation? These questions the record answers against him. But he insists, he was forced into court by the decision of the court below; that he was compelled to answer. How so? There is not power enough in all our judiciary, to compel a defendant in a civil cause, to answer plaintiff's petition. The decision was but an opinion of the court, subject to review here, and the defendant was no more bound to answer, in consequence, than he would have been, if the decision had never been made. All that he did, after taking his bill of exceptions, was purely voluntary; but, say his counsel, we were not bound to take the risk of an affirmance. We answer, if the decision was erroneous, defendant ran no risk. If it was correct, he had no right to refuse to answer, although he had the power. The fact of his refusing, or answering, could not change the law of service. Had he refused, the case would not have stood upon its merits, but on his exceptions; but he has voluntarily appeared and brought out the case upon its merits, and now, by every principle of justice, he should be compelled to abide the event.

Suppose the court establishes the practice as claimed by defendant, what will be the practical result? To accumulate costs upon the parties, and perpetuate useless and expensive litigation, and that is all. In this new country, where incapacity seems to be considered by some, the highest qualification for office; where more than one-half the returns and services, through the ignorance of officers, are defective;

would not such a practice prove a stumbling block to justice? Suppose the opposite practice established, could it ever work injustice? Certainly not. If the party is surprised by the decision upon the service, he can continue his cause, if he needs time for preparation. If the decision is erroneous, it will be reversed, if he stands upon it. It was always the policy of the law to require matters, not to the merits, to be pleaded first, to save expense. In principle it is not just, that a defendant entice plaintiff into a trial of the merits, with its attendant expenses, and then fall back in the Supreme Court upon a prior step in the case.

But we are referred to several decisions of common law courts, to sustain the practice claimed by defendant. We admit, frankly, that the majority of the common law decisions are against us on this point, so far as we have examined them, although the only decision in our own state, seems to have established our practice as we claim it should be. *Switzer* v. *Gowdy*, Morris, 248. But we think we have already shown, that this court, under our system, is not bound by precedents in other states, in matters of practice, unless the decisions are based upon sound reason and justice. We insist, that our courts are entitled to the full benefit of the maxim, that " when the reason no longer exists, the rule ceases."

Why, then, did the courts of common law hold, that the defendant did not waive his right by afterwards pleading over? We answer, that the decision had its origin at a time when every defendant in a civil, as well as criminal case, was brought in on a capias. 3 Black. Com. chap. 19. Originally, the defendant was compelled into court by a gage of his property; if he did not then come in, a capias was issued, and the defendant pushed to outlawry, and in all the old writs, and in those of Vermont, until recently, and some other states at this day, the officer is ordered by the writ to have defendant's body before the court, &c. The appearance was compulsory, not voluntary; the defendant was in the custody of the law; and if he were compelled to stand upon his objection to the process, he must remain in

duress until the question was decided by the supreme or appellate court. He could not depart voluntarily, and leave the question to be decided afterwards; he must remain, but so remaining, the court heard the cause in full, and gave him the benefit of all his exceptions after judgment. This is evidently the view taken by the court in the case in Morris, where they say an appearance is not a waiver, when not voluntary. This reason was sound, and the rule just. A reference to the authorities against us will show that they trace directly through each other, back to the time when the capias was the process. But the reason for this rule no longer exists. No man can now be compelled to come into court, to answer a civil action. He may tell the sheriff what he pleases, and he can only be subjected to a charge of want of politeness. The writ of summons has, in the advance of jurisprudence, superseded the capias; and no man who appears and answers to a civil action, can be said to be in court by compulsion. Upon what ground, then, can the practice claimed by defendant be based? After service, whether defective or good, the defendant is either in court or not, by virtue of the service. If in court, well; if not, and he afterward answers, his appearance is purely voluntary; and it is a contradiction in terms, to say that he was compelled to answer, when there was no legal service on him, because the District Court erroneously decided that the service was sufficient. The question as to the sufficiency of the service, is of a fact in law, if we may use the term, which the decision of the court below, cannot vary. If he be not in court lawfully, by virtue of the service, he cannot answer, except voluntarily. We conclude, then, if the service was defective, his answer was, and must have been, voluntary, and he was voluntarily in court. Had he, however, been brought in, as at common law, by capias, then his appearance would have been compulsory, and his answer or plea compulsory also.

Let us view this question in another light, with reference to the common law cases. We take it to be well settled, that in civil actions, a party pleading over after the overruling of his demurrer, waives his demurrer. *Peck* v.

*Boggess,* 1 Scam. 281; *Buckmaster* v. *Grundy,* Ib. 310; 2 Ib. 355; *Snyder* v. *Gaither,* 3 Ib. 91. Why have the courts so held, and yet decided that pleading over did not aid a defective service, when properly objected to? Clearly, upon the sole ground, that the demurrant had made an appearance, and was voluntarily in court; but in the case of defective service, defendant was considered as in court by compulsion. Had defendant, in both cases, been deemed voluntarily in court, we can perceive no good reason for holding a waiver in one case, and not in the other. The cases cited by defendant, then, are based upon the legal fiction, that defendant was in court by compulsion, and answered or pleaded by compulsion of court. Hence, after an erroneous decision that the service was sufficient, the defendant could not, if he saved the point, be considered as acting voluntarily, or waiving any of his rights, but as acting under duress. We conclude, that the reason for the common law rule, has ceased to exist, and that the rule should be abolished; that it cannot be sustained upon principle, and is utterly inconsistent with the spirit of our system of procedure and practice; and that no injurious result can follow its abrogation, while its establishment would entail protracted litigation, and great, and useless expense, upon the parties, and leave innocent persons to suffer for all technical mistakes of incompetent or blundering officials.

WOODWARD, J.—We think that the sheriff's return to the notice, was insufficient to place the defendant in court. The copies left at the place of business, and at the sleeping room of defendant, must go for nothing. It is very clear, that the law does not recognize any such mode of service. The place where the copy is left, must be returned by the sheriff as defendant's "usual place of residence," in which case, the copy must be left with some member of the family more than fourteen years of age. The return must further show, at whose house, and the name of the person with whom, the copy is left, or a sufficient reason must be given for the omission. The sheriff returns in this case, that he

"left a copy with Mrs. Gay, at defendant's boarding-house, being the residence of E. E. Gay—the above-named Mrs. Gay being over fourteen years of age, and being a member of the family of E. E. Gay." This return is defective in not showing that the house of E. E. Gay was the usual place of residence of defendant, and that Mrs. Gay was a member of defendant's family. It is hardly necessary for us to point out that Mr. Gay's may have been his boarding-house, without being defendant's usual place of residence, and that Mrs. Gay may have been a member of the family of E. E. Gay, without being a member of the same family with defendant. We do not intend to determine here that the defendant must be the head of the family, with a member of which the copy is left, but only that they must be of the same family. The words "the family," in the statute, mean the family of which the defendant is a member.

The motion to set aside the proceedings having been overruled, the defendant appeared to the action, filed his answer, and the trial proceeded as though he was regularly brought into court. Has he, by such appearance, waived his right to question the correctness of the decision of the court on the motion to set aside the sheriff's return? It is claimed by defendant, that this right has not been waived, as his appearance was after the objection had been taken and overruled by the court; and that if the decision of the court was erroneous, he should not lose the benefit of his exceptions to it by an appearance which was the consequence of such erroneous decision, and which was in a manner enforced. The plaintiff, on the other hand, contends that the objection was waived by the appearance, and if not waived, that the error was of such a character that the substantial rights of defendant have not been prejudiced by it; and that he has had a fair trial on the merits, with full opportunity of making his defence.

There can be no question but that the doctrine is plainly laid down in decisions almost without number, that by appearance and pleading, defendant waives all defects in the process as well as in the service thereof. *Bell* v. *Pierson,*

Morris, 28; *Hall* v. *Biever*, Morris, 113; *Rowley* v. *Stoddart*, 7 Johns. 207; *Pixley* v. *Winchell*, 7 Cowen, 366; *Knox* v. *Summers*, 3 Cranch, 496; *Buckingham* v. *McLean*, 13 How. 150. We find the doctrine laid down, as given in many of the earlier reported decisions, that when the defendant has appeared and is in court, there is an end of the mesne process. 3 Term Rep. 611; 1 Stra. 155. From this the courts have also inferred, that after the defendant has appeared, he cannot take advantage of any error in the process, or the service of it. *Fox* v. *Money*, 1 B & P. 250; *Davis* v. *Owen*, 1 Ib. 344. Hence, an application to set aside proceedings for irregularity, must be made as early as possible, and, as it is commonly said, in the first instance; and where there has been an irregularity, and the party overlooks it, and takes subsequent steps in the cause, he cannot afterwards revert back to the irregularity and object to it. *Pierson* v. *Rawlings*, 1 East, 77; *Diargent* v. *Vivant*, 1 Ib. 330; 1 Payne & Davies Practice, 366.

In *Diargent* v. *Vivant*, 1 East, 330, the defendant had put in special bail: on a rule to show cause why the bail bond should not be delivered up to be canceled, on account of a defect in the affidavit to hold to bail, Lord KENYON, C. J., held, that the affidavit to hold to bail, is process. Any irregularity in it must be taken advantage of in the first instance, and is waived where defendant voluntarily does any act submitting to such process, instead of taking steps to avail himself of the irregularity. Suffering the return term to pass, or putting in bail voluntarily, is a waiver. The court further say, that if defendant is under arrest, his consent to giving the bail bond, would not be binding on him, because it would be considered as given under duress. Where he voluntarily gives bail, it is a waiver of the irregularity in the affidavit. See also, *Norton* v. *Danvers*, 7 Durnford & East, 371. The doctrine that appearance and pleading cures all defects in the process and service, must be taken with some degree of qualification. It certainly cures all defects in the process, and the service, not objected to in proper time and manner. All irregularity in

judicial proceedings is waived by taking any subsequent step in the cause, without objection.   In *Beecher* v. *James*, 2 Scam. 462, it is held, that a motion to quash an attachment must be made at the return term.   By appearance and pleading, without motion to quash, the irregularity is waived.   So in *Easton* v. *Altum*, 1 Scam. 250, it is held, that where the defendant appears, or is in court without objection, he waives all irregularities as to the mode the plaintiff has resorted to to compel his attendance.   So also, in *Pearce* v. *Severn*, Ib. 269, where the process was irregular, the court held, that if no objection is made, the irregularity was waived; and that it was not like a case of defective jurisdiction over the subject matter, nor where jurisdiction is given to an inferior court, which must proceed in the manner pointed out by the statute, or its proceedings will be *coram non judice* and void.

If the defendant takes objections to the error or irregularity in the process or proceedings, in the first instance, and before he has appeared to the action, and the objection is overruled, does he waive the objection by taking any other step?   The objection to the sheriff's return, in the present cause, was taken in the proper time and manner. It should have been sustained by the court, and the sheriff's return set aside.   The District Court, however, decided the return to be " good, and sufficient to place the defendant in court, subject to plead."   Now it was certainly within the choice of the defendant, to refuse to appear and plead to the action, and to suffer judgment to be rendered against him on the overruling his motion.   By so doing, he could have tested in this court, the correctness of the decision ; or, without submitting necessarily to the judgment against him, we are not prepared to decide, that he might not have taken an appeal to this court, from the judgment of the District Court on his motion, under sections 1557 and 1985 of the Code.   But where the party, instead of suffering judgment on the overruling of the motion, as in this case, fully appears to the action, and a trial is had, a question is raised for our consideration, for which, we confess, we have found

no very ready solution in any of the adjudicated cases to which we have had access. The service on defendant was clearly insufficient. It was an irregularity or defect which would not, however, have caused a dismissal of the suit. The only result of granting the defendant's motion, would have been a continuance of the cause, until defendant could have been properly served, and placed within the jurisdiction of the court. Does, then, the appearance and pleading obviate the objection? Or, shall defendant, even after trial and judgment against him, be permitted in this court, to go back to the decision of the court on the motion to set aside the sheriff's return? It would seem from the case of *Hussey* v. *Wilson*, 5 Durnford & East, 254, that where there is a radical defect in the proceedings to hold to bail, it will not be considered as waived by the defendant putting in bail, before taking exception to the defect. The court held, that there is a clear distinction between a mere irregularity in the mode and time of proceeding, and a complete defect in the proceedings themselves. The affidavit which was the foundation of the proceedings, being defective, the bail bond was ordered to be canceled. Where an objection is taken, which would be fatal to the proceedings, and for which they should be dismissed, and it is overruled by the court, and the defendant afterwards appears and pleads to the suit, it would seem that the objection is not waived by the subsequent appearance. To this effect, is the case of *Secrest* v. *Arnett*, 5 Blackford, 366, cited by appellant's counsel. In an action before a justice of the peace, defendant moved to dismiss the suit, because the christian names of defendants were not stated in the writ. The motion was overruled. The plaintiffs then filed their declaration, stating their christian names. The defendant pleaded to the action, and on trial, judgment was rendered for the plaintiffs. The Circuit Court, on motion, dismissed the suit, for the reason urged by defendant before the justice. On error to the Supreme Court, the plaintiffs contended that the defect in the writ was cured by the plea before the justice. BLACKFORD, J., says: "We do not think so. The objection to the writ was made and overruled

Converse, Administrator v. Warren.

before the appearance and plea to the suit. There was, therefore, no waiver of the objection." In *Wheeler* v. *Lampman*, 14 Johnson, 481, the summons was served on defendant by a constable, in an action before a justice of the peace. The return did not show the date of the service, as required by the law of New York. The defendant appeared, and objected to the return. The objection was overruled by the justice, who decided that the return was sufficient. Issue was then joined, and judgment was rendered for the plaintiff. The Supreme Court held, that the appearance of the defendant in the justice's court, merely for the purpose of objecting to the constable's return, was not a waiver of the irregularity of the return. The law was peremptory that the time when the summons is served, shall be returned thereupon, and its injunctions must be obeyed. The court further says: " If the defendant had waived the irregularity, by pleading to the declaration, without objecting to the return, it would have been too late to make the objection now. In *Shannon* v. *Comstock*, 21 Wendell, 457, the defendants were arrested on a warrant, issued in a suit before a justice of the peace, on an affidavit that they were non-residents of the state. On being brought before the justice, before pleading to the action, they moved to quash the proceedings, on the ground that they were residents of the city of New York, and not liable to arrest by warrant. The plaintiff, for the purpose of the motion, admitted that the defendants were residents of the county in which the suit was brought. The justice refused to grant the motion. After plea in abatement overruled, defendants pleaded the general issue, and on trial, judgment was rendered for plaintiff. The Supreme Court held, that the proceedings should have been set aside for irregularity, and that it was no answer that defendants finally pleaded in bar. "Such an answer," they say, " must rest on the ground of voluntary waiver. In this case, the propriety of the arrest was questioned at once, on admitted facts, and defendants, being in custody, were compelled to plead over." In the case of *Wheeler* v. *Lampman*, though it does not seem clear to us, that the objection taken to the officer's

return, was such a one as ought to have been fatal to the suit, yet the court hold, that the statute is peremptory in requiring the time of the service to be indorsed on the summons. The failure of the constable to state the time in his return, was at all events, such a defect, that the appearance and pleading by defendant, did not supply its place, or amount to a waiver of it. In the case of *Secrest* v. *Arnett*, and of *Shannon* v. *Comstock*, the defects in the proceedings were such as the court adjudged fatal, and sufficient to cause the dismissal of the suits. They would have been considered as waived, if the parties had appeared and pleaded, without making objection to them.

The case of *Switzer* v. *Gowdy*, Morris, 248, was an action of trespass, commenced in Linn county, in which a capias was issued to Cedar county, and defendant arrested there. The defendant appeared by attorney, and moved to quash the writ. The court overruled the motion. The defendant then pleaded not guilty, and afterwards withdrew his plea, and by agreement of counsel, submitted to judgment, with stay of execution. There was an entry that defendant waived no error by the agreement, and that plaintiff, at the time, denied his right to make the reservation. The court, not being unanimous, and expressing no opinion as to whether the writ should have been quashed, were all of opinion, that admitting the defendant was wrongly arrested, the error was cured by the agreement entered into by the parties by their attorneys. They further say: "Had the suit been commenced by summons, his appearance alone would have been a waiver of all antecedent objections. Such, however, is not the case where the appearance is not voluntary. Here the defendant not only appeared by his counsel, but gave his consent, through the same medium, that the judgment, for a specified amount, should be rendered against him. This cures all defects and irregularities in the previous proceedings." It will be perceived, that the court base their decision on the agreement, and not on the appearance of defendant, after his objection to the writ.

We have sought for some general rule or principle, on

which the cases above cited, have been determined, which will be equally applicable to the one under consideration. It will be seen that the rule is incorrect, as laid down in its broadest terms, that appearance and pleading cures all irregularities of process. Objections taken in proper time and manner, to the process and its service, are not waived by pleading or taking subsequent steps in the cause. And where the defect is in the proceedings themselves, it is not waived by taking such subsequent steps; and the objection has been held good, when made after appearance. After the best consideration we have been able to give to the subject, we are inclined to hold, that the defendant, having taken objection to the defective service of process in the proper time and manner, and his objection having been erroneously overruled by the court, and he required to plead to the action, did not waive or lose the benefit of his objection, by appearing and pleading. Although defendant appeared and filed his answer to the petition in the District Court, yet such appearance must be considered to have been made under protest, and subject to the exception taken to the decision of the court, on the motion to set aside the return. The appearance will not be considered voluntary, where it has been made in consequence of, or in obedience to, an erroneous decision of the court, on so material and important question, as whether a party defendant has been properly served with notice of suit, and his person brought within its jurisdiction. An appearance has been held, not to supply the lack of the Christian names of the plaintiffs in the writ. 5 Blackford, 366. It has been held, that it did not supply the lack of a proper date to the constable's return, (14 Johns. 481;) and that it did not render defendants liable to arrest as non-residents, who were admitted residents of the county in which the suit was brought. 21 Wendell, 457. So, we think, in this case, that the appearance and pleading could not be effectually urged against a party, who has resisted its jurisdiction in the proper manner and at the proper time. The service of notice, under our practice, stands instead of the arrest of the body, under the common

law ; and it was never held, that a defendant, by appearing, waived the irregularity of the process or arrest, if objection was taken in time. If the defendant has been illegally arrested, as by breaking open the door of his dwelling, the court may discharge him from custody. *Lee* v. *Gansel*, 1 Cowp. 9.

A majority of the court are of the opinion, nevertheless, that the defendant cannot assign this ruling of the court, as an error, in view of the actual history and state of the cause. It is true that this is a jurisdictional matter, but it is to be remembered that service, under our law, is only to give a party notice, and the legal time to prepare for trial; and that it is not, in all respects, and in all its incidents, equivalent to the former arrest of the body; and, also, that if the service had been held insufficient by the court below, this would not have led to a dismissal of the cause, but only to a continuance, for a new service. Now, at that term, which was the first term, the defendant's counsel applied for, and obtained a continuance. And, at the second term, the cause was again continued, in order to obtain the sworn replication of the plaintiff, which was called for by the defendant; so that the latter party had, to prepare for trial, more than all the time which he would have obtained ordinarily, had the service been held insufficient. If the defendant had been driven into a trial at the first term, and verdict and judgment had been against him, we think, he would have been authorized to make the objection in this court; for then he would have stood in the position of having made his objection in proper time and manner, and of being driven into a trial, without the legal opportunity for preparation. But to permit the party to take the objection now, after he has had all the time, and all the opportunity, which he would have had by granting his motion—after a full and fair trial, under ample time for preparation—would bring a reproach upon the law which would be richly merited. The case comes within that class, in which it is often held, that an error which works no injury, shall not vitiate. Whatever slight departure there may be in this view from strict

Converse, Administrator v. Warren.

logical or legal reasoning, it is compensated by the above considerations; that the cause has been pending some three or four terms; that it was twice continued, and once on defendant's motion; that he has had all the time for preparation, that he could have gained in any other manner; and thus that he cannot claim to have suffered injury by being pressed into a trial, without legal notice. Under these circumstances, it seems to a majority of the court, to be an abuse of the law, to reverse all that has been done, and send the parties back to commence again, and travel over the same ground.

The remaining error assigned, arises on the following circumstances: The defendant objected to the note offered, being permitted to go before the jury as evidence. The objection was, that there was a variance between that declared on and that offered—the variance existing in the date of the note. Upon this question, whether there was a variance, and whether the note should be shown as evidence to the jury, the plaintiff called the defendant himself, to testify. The witness being turned over to the defendant's counsel, he inquired as to the consideration, and as to his defence to it, and claimed that his answer should go to the jury. The plaintiff objecting, the court sustained the objection. In this, there was no error. The inquiry upon which the defendant was introduced as a witness, was before the court only, and was a preliminary question, whether the note could be offered in evidence. The judgment of the District Court is affirmed.

WRIGHT, C. J.—I desire to say, that I think the service upon the defendant was clearly defective, for the reasons stated in the foregoing opinion, but hold that by pleading over and going to trial, he waived the right to afterwards object to the sufficiency of such service. To place this part of the case upon this simple, broad ground, would be to me more satisfactory, than to have the decision turn upon what afterwards, through several terms, transpired in this particular case. I am clearly of the opinion, that under our

law and system of practice, as recognized by our earliest and latest decisions, the defendant, if he would ask the decision of this court upon such a question, must stand upon his motion, and leave the plaintiff to take his own course in the cause ; and that by pleading over, he waives the objection, whether the trial is at the same or a subsequent term. He is not compelled to plead over, or make any further appearance. If he does so, however, he thus voluntarily submits to the jurisdiction, and his right to complain of the decision on his motion, is, by that act, as completely taken away, as it is by any number of after continuances, motions, or trials. *Hotchkiss* v. *Thompson*, Morris, 156 ; *Harmon* v. *Chandler*, 3 Iowa, 151 ; *Mitchell* v. *Wiscotta Land Co.*, Ib. 210. And, entertaining this opinion, I, of course, have no difficulty in concurring in the view taken, that after repeated continuances, and after the defendant has had ample time to prepare his defence, he should not be permitted to now claim that he was not properly in court. If one forward step, after the overruling of his motion, would operate as a waiver, then, quite clearly, would several such steps, running through after terms of the court, as shown in the history of this cause.